# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GABRIELA CAMACHO,

      Petitioner,

    v.                                  **CIVIL NO. 10-0148 MV/LAM**

ARLENE HICKSON, et al.,

      Respondents.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on Petitioner Gabriela Camacho's ***Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody*** *(Doc. 1)* (hereinafter "***Petition***"), filed on February 19, 2010. In response to the ***Petition***, Respondents filed ***Respondents' Answer to Petition for Writ of Habeas Corpus (28 U.S.C. § 2254)*** *(Doc. 7)* (hereinafter "***Response***") on March 31, 2010. Chief United States District Judge Martha Vázquez referred the claims raised in the ***Petition*** to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. *See **Order of Reference Relating to Bankruptcy Appeals, Social Security Appeals, Prisoner Cases, and Immigration Habeas Corpus Proceedings*** *(Doc. 8)*. Having considered the parties' submissions, relevant law, and the record in this case, the

---

[1]**Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

undersigned recommends, for the reasons set forth below, that the claims raised in Ms. Camacho's *Petition* be **DENIED** because they are without merit and that this case be **DISMISSED with prejudice**.

Because the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary. *See Anderson v. Attorney General of Kansas*, 425 F.3d 853, 858-59 (10th Cir. 2005) (evidentiary hearing unnecessary if § 2254 habeas claim can be resolved on the record).

Ms. Camacho is incarcerated and proceeding *pro se*. *See **Order** (Doc. 4)* (granting Ms. Camacho's ***Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 (Doc. 3)***). Because she is a *pro se* litigant, the Court construes her ***Petition*** liberally and holds it to a less stringent standard than pleadings drafted by an attorney. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted).

### I. Factual and Procedural Background

On October 20, 2005, a jury found Ms. Camacho guilty of four crimes committed on February 26, 2004. *See **Response***, Exhibit A *(Doc. 7-1)* at 1 (Judgment and Sentence from state district court). The crimes for which Ms. Camacho was convicted are: Count 1, trafficking heroin by possession with intent to distribute, second offense, in violation of N.M.S.A. 1978 § 30-31-20(A)(3); Count 2, trafficking cocaine by possession with intent to distribute, second offense, in violation of N.M.S.A. 1978 § 30-31-20(A)(3); Count 3, use or possession of drug paraphernalia, in violation of N.M.S.A. 1978 § 30-31-25.1; and Count 4, abuse of a child, no death or great bodily harm, in violation of N.M.S.A. 1978 § 30-06-01(D) (a 3rd degree felony). *Id.* The charges against Ms. Camacho were based on a search of Ms. Camacho's home by two probation and parole officers, with the assistance of local law enforcement officers, who found bags containing

heroin and cocaine, drug paraphernalia, and Ms. Camacho's driver's license and personal jewelry in one of the bags.  *Id.*, Exhibit F *(Doc. 7-1)* at 38 (Ms. Camacho's Docketing Statement filed with the New Mexico Court of Appeals in her direct appeal), and Exhibit H *(Doc. 7-1)* at 54 (Ms. Camacho's Memorandum in Opposition to the New Mexico Court of Appeals' Proposed Summary Affirmance).  At the time of the search, another woman, Guadalupe Reyes, and her minor daughter, were found in the residence.  *Id.*, Exhibit F *(Doc. 7-1)* at 38, and Exhibit H *(Doc. 7-1)* at 55.  Ms. Reyes was charged with possession with intent to distribute heroin and cocaine arising out of the same search.  *Id.*

After Ms. Camacho was convicted by a jury, the state district court judge in her case sentenced her to: 18 years on Counts 1 and 2 each, to run concurrently (*id.*, Exhibit B *(Doc. 7-1)* at 5); 364 days for Count 3 and three years for Count four, to run concurrently; and a one-year enhancement for Count 4 (*id.*, Exhibit A *(Doc. 7-1)* at 2).  The state court ordered the sentences for Counts 1 and 2 to run consecutively to the sentences for Counts 3 and 4, so Ms. Camacho's total period of incarceration for these convictions is 22 years.  *Id.*, Exhibit B *(Doc. 7-1)* at 5.[2]  Upon completion of imprisonment, Ms. Camacho must serve a mandatory parole term of two years.  *Id.*, Exhibit A *(Doc. 7-1)* at 2, and Exhibit B *(Doc. 7-1)* at 5.

On September 17, 2007, Ms. Camacho filed a *pro se* Petition for Writ of Habeas Corpus with the state district court.  *Id.*, Exhibit C *(Doc. 7-1)* at 7.  As grounds for her petition, she contends that her trial counsel failed to: (1) subpoena a "key material witness;" (2) file for a continuance during her trial so Ms. Camacho could access her psychotropic medication; (3) preserve issues regarding

---

[2]The state district court entered its Judgment and Sentence for Counts 3 and 4 on March 13, 2006, stating that the sentencing for Counts 1 and 2 would be continued at that time (*id.*, Exhibit A *(Doc. 7-1)* at 2), and entered it its Judgment and Sentence for Counts 1 and 2 on July 13, 2006 (*id.*, Exhibit B *(Doc. 7-1)* at 4-6).

prosecutorial misconduct for appeal, (4) file a direct appeal of her conviction; (5) file a motion for reconsideration of her sentence; (6) provide a complete police report to Ms. Camacho so she could participate fully in her defense; (7) file a motion for an evidentiary hearing regarding expert witness testimony; (8) provide Ms. Camacho with trial or pretrial testimony of her co-defendant so she could assist in her own defense; (9) discuss defense strategy or allow Ms. Camacho to participate in her own defense; (10) file a motion for change of venue; and (11) ensure Ms. Camacho was dressed in "street clothes" for her trial. *Id.* at 9-10.  In addition, Ms. Camacho alleged that the prosecution misrepresented evidence in her trial and selectively prosecuted Ms. Camacho for child abuse, and that there was a disparity between the sentences of herself and her co-defendant. *Id.* at 10. Ms. Camacho attached to her state habeas petition two letters from her counsel, J. Robert Beauvais, wherein he states, *inter alia*, that he found no viable issues for an appeal of her case, but that he could ask the appellate court to consider an untimely appeal, and that Ms. Camacho could exercise her right to file a motion for a writ of habeas corpus. *Id.* at 11-15.  The state district court dismissed her habeas petition on September 19, 2007, stating that "Defendant was dressed in 'Civilian Clothes' during her trial," and that her state habeas petition "is groundless." *Id.*, Exhibit D *(Doc. 7-1)* at 33.

On March 12, 2008, Ms. Camacho filed a *pro se* notice of appeal from her July 13, 2006 judgment and sentence. *Id.*, Exhibit E *(Doc. 7-1)* at 34.  On July 15, 2008, the New Mexico Court of Appeals *sua sponte* entered an "Order to Show Cause and to File Docketing Statement." *Id.*  The court stated that, pursuant to Rule 5-702 NMRA, Ms. Camacho's trial counsel was required to file either a notice of appeal or an affidavit signed and sworn by Ms. Camacho stating that she did not wish to appeal, and, pursuant to Rule 12-208 NMRA, her trial counsel is responsible for preparing and filing a docketing statement, which he had not done. *Id.* at 35.  The court, therefore, ordered Mr. Beauvais to file a docketing statement and to show cause why he should not have sanctions

imposed on him for failing to timely file a notice of appeal and docketing statement.  *Id.* Mr. Beauvais filed the Docketing Statement on August 28, 2008. *Id.*, Exhibit F *(Doc. 7-1)* at 36-46. On September 26, 2008, the New Mexico Court of Appeals entered a Notice of Proposed Summary Disposition, proposing to summarily affirm Ms. Camacho's conviction and sentence, stating that the court found no merit to her ineffective assistance of counsel claims, and explaining that even though "failure to pursue an appeal in a timely fashion constitutes per se ineffective assistance of counsel, . . . the only form of relief that is afforded in such cases is to allow untimely appeals to proceed on their merits," which the court has done.  *Id.*, Exhibit G *(Doc. 7-1)* at 50 (citing *State v. Duran*, 105 N.M. 231, 233, 731 P.2d 374, 376 (N.M. Ct. App. 1986).  On January 12, 2009, Ms. Camacho's appellate counsel filed a Memorandum in Opposition to Proposed Summary Affirmance, making the following claims: (1) that Ms. Camacho's trial counsel was ineffective because he (a) failed to ensure she had her medication during trial, (b) allowed her to appear in prison garb in front of the jury, (c) failed to forensically examine the state's evidence, and (d) failed to depose a known witness; and (2) Ms. Camachos's two convictions for trafficking a controlled substance violate the double jeopardy clause of the United States constitution, and the jury should have been instructed on the single intent doctrine.  *Id.*, Exhibit H *(Doc. 7-1)* at 56-63.  On January 27, 2009, the New Mexico Court of Appeals issued its Memorandum Opinion rejecting Ms. Camacho's claims on direct appeal and entered a decision affirming her conviction and sentence.  *Id.*, Exhibit I *(Doc. 7-1)* at 65-69.

On February 10, 2009, Ms. Camacho's appellate counsel filed a Petition for Writ of Certiorari asking the New Mexico Supreme Court to review the New Mexico Court of Appeals' decision upholding her conviction and sentence.  *Id.*, Exhibit J *(Doc. 7-2)* at 1-23.  The New Mexico

Supreme Court summarily denied the Petition for Writ of Certiorari on March 5, 2009. *Id.*, Exhibit K *(Doc. 7-2)* at 24.

On July 6, 2009, Ms. Camacho filed a second *pro se* Petition for Writ of Habeas Corpus in the state district court, alleging: (1) that her trial counsel was ineffective for (a) ignoring her requests to file a notice of appeal of her conviction and sentence and filing an untimely notice of appeal and docketing statement, (b) refusing to comply with the New Mexico Court of Appeals' order to file a docketing statement and to show cause why sanctions should not be imposed on him, (c) failing to subpoena Ms. Camacho's co-defendant, Ms. Reyes, to testify about who owned the narcotics, and failing to object to the use of Ms. Reyes' hearsay testimony from Ms. Reyes' trial that the narcotics belonged to Ms. Camacho, thereby violating Ms. Camacho's right of confrontation, (d) failing to present potential defense witnesses for Ms. Camacho's trial to testify that Ms. Reyes stated in prison that the narcotics belonged to Ms. Reyes, (e) failing to disclose to the jury and the trial court that Ms. Camacho needed medications in order to understand the trial proceedings and participate in her defense, and (f) failing to submit a lesser offense of "personal possession" as a jury instruction (*id.*, Exhibit M *(Doc. 7-2)* at 33-36); (2) that the state court judge (a) abused her discretion in denying Ms. Camacho's petition for an evidentiary hearing, (b) was in error in stating that Ms. Camacho was in civilian clothes before the jury, and (c) was in error by failing to inquire into Ms. Camacho's health when her medical issues were disclosed to the judge during the pre-trial hearings (*id.* at 37); and (3) that the prosecution (a) failed to disclose that the Ruidoso Police Department staged the crime scene, (b) introduced Ms. Camacho's husband's history of drug offenses in order to discredit her, and (c) allowed Ms. Reyes to "walk" despite her ownership of the narcotics (*id.* at 38-39). The state district court summarily dismissed Ms. Camacho's Petition for Writ of Habeas Corpus on July 13, 2009, stating that it was groundless. *Id.*, Exhibit O *(Doc. 7-2)* at 41. On September 1, 2009,

Ms. Camacho filed in the state district court a "Request for Filing of Instant Petition Submitted 7-1-09," wherein she states that her Petition for Writ of Habeas Corpus was submitted to that court on July 1, 2009 and asks the court to file it.  *Id.*, Exhibit N *(Doc. 7-2)* at 40.  On September 4, 2009, the state district court entered a second Order of Summary Dismissal, stating again that Ms. Camacho's Petition is groundless and attaching a copy of the July 13, 2009 Order of Summary Dismissal.  *Id.*, Exhibit P *(Doc. 7-2)* at 42.  On September 28, 2009, Ms. Camacho filed a Petition for Writ of Certiorari with the New Mexico Supreme Court.  *Id.*, Exhibit Q *(Doc. 7-2)* at 43-54.  The State of New Mexico filed a response to Ms. Camacho's Petition for Writ of Certiorari on November 18, 2009, stating that review of the July 13, 2009, order was barred because the petition for certiorari was not timely filed under Rule 12-501 NMRA within thirty days of that order, and then, referring to the September 4, 2009, order, discussing Ms. Camacho's claims in her Petition for Habeas Corpus on the merits.  *Id.*, Exhibit R *(Doc. 7-3)* at 1-17.  On December 2, 2009, the New Mexico Supreme Court summarily denied Ms. Camacho's Petition for Writ of Certiorari.  *Id.*, Exhibit S *(Doc. 7-3)* at 18.  On December 1, 2009, Ms. Camacho submitted a reply to the state's response to her Petition for Writ of Certiorari (*id.*, Exhibit T *(Doc. 7-3)* at 19-30), which, it appears, the New Mexico Supreme Court treated as a motion for reconsideration and denied on January 6, 2010 (*id.*, Exhibit U *(Doc. 7-3)* at 31).  On February 19, 2010, Ms. Camacho filed her ***Petition*** for federal habeas relief in this Court, initiating this proceeding.  *See **Petition** (Doc. 1).*

### II.  Ms. Camacho's Section 2254 Claims

In her ***Petition***, Ms. Camacho raises four grounds for relief: (1) that her trial counsel was ineffective (***Petition*** *(Doc. 1-3)* at 1-5, listing 8 reasons for ineffective assistance of counsel); (2) that the trial court abused its discretion (*id.* at 6, listing 4 reasons the trial court abused its discretion); (3) that the state engaged in prosecutorial misconduct (*id.* at 7-8, listing 3 reasons for prosecutorial

misconduct); and (4) that Ms. Camacho's two convictions for trafficking violated the double jeopardy clause of the United States Constitution and the jury should have been instructed on the single intent doctrine (*id. (Doc. 1-2)* at 2).   In their ***Response***, Respondents argue that Ms. Camacho's ***Petition*** should be dismissed because Ms. Camacho fails to show that the state court proceedings either resulted in a decision that was contrary to, or involved an unreasonable application of, federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   ***Response (Doc. 7)*** at 6-7 (citations omitted).   Additionally, Respondents assert that Ms. Camacho has not offered clear and convincing evidence to overcome the presumption of correctness applied to state court factual determinations pursuant to 28 U.S.C. § 2254(e)(1).   *Id.* at 7.   Respondents ask the Court to dismiss the ***Petition***.   *Id.* at 9.   Ms. Camacho did not file a reply to Respondents' ***Response***.

### III.  Exhaustion of State Court Remedies

A state prisoner must generally exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254.   *See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002).   The exhaustion requirement is considered satisfied "if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack."   *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted).   The Tenth Circuit has held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review with the state supreme court.   *Barnett v. LeMaster*, 167 F.3d 1321, 1323 (10th Cir. 1999).   In their ***Response***, Respondents state that Ms. Camacho has exhausted her claims raised in her ***Petition*** because they have been raised on direct appeal and in state habeas corpus proceedings, and certiorari review was sought and denied by the New Mexico Supreme Court.   ***Response (Doc. 7)*** at 6.   The Court agrees

-8-

that all of Ms. Camacho's claims appear to have been raised either on direct appeal or in her second

state petition for habeas corpus (for which Ms. Camacho sought and was denied review by the New

Mexico Supreme Court), except for her claim that the state trial judge did not apply the correct

controlling authority in its decision to deny her a writ of habeas corpus.  *See **Petition** (Doc. 1-3)* at 6.

However, even if this claim has not been exhausted, the Court chooses to address the claim on the

merits.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on

the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the

courts of the State."); *see also Hardiman v. Reynolds*, 971 F.2d 500, 502 (10th Cir. 1992)

("Generally, where the parties have not raised a defense [of exhaustion or procedural default], the

court should not address the defense sua sponte."); *Gonzales v. McKune*, 279 F.3d 922, 926

(10th Cir. 2002) (quoting *Hardiman*, 971 F.2d at 502).

### IV.  Claims for Habeas Corpus Relief

#### A.  Standards of Review

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and  Effective

Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter, "AEDPA"), govern this case.  The Court

cannot grant Ms. Camacho habeas relief pursuant to 28 U.S.C. § 2254(d) unless the decision in her

state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based

on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding."  28 U.S.C. §§ 2254(d)(1)-(2).  The United States Supreme Court has construed these

statutory provisions, and established rules for applying them, in a series of cases decided since the

enactment of AEDPA.  *See, e.g., Wright v. Van Patten*, 552 U.S. 120 (2008); *Fry v. Pliler*,

551 U.S. 112 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (per curiam); *Mitchell v. Esparza*,

540 U.S. 12 (2003) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3 (2002) (per curiam); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. at 413. A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions. [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-1293 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting

the "decision."  *See Cook v. McKune*, 323 F.3d 825, 830-831 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision).  Moreover, if a state court's decision does not conflict with the  reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous."  *Mitchell v. Esparza,* 540 U.S. at 17.  If a state court decides a claim on the merits in summary fashion, the AEDPA standards still apply, but the focus is on the state court's results rather than any reasoning.  *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Williams v. Taylor*, 529 U.S. at 413.  However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Lockyer v. Andrade*, 538 U.S. at 75-76 (internal quotations and citations omitted).  "Rather, that application must be objectively unreasonable."  *Id.* at 76.  A state court cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law," under 28 U.S.C. § 2254(d)(1), if no Supreme Court decision provides a clear answer to a question presented in the state court.  *See Wright v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 747 (2008) (citing *Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 654 (2006)).

Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d). If the state court did not adjudicate the claim on the merits, a federal court reviews the claim *de novo* under the pre-AEDPA standard of review. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citing *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999)). Under the pre-AEDPA standard of review, a state court's findings of fact are afforded a presumption of correctness, and both legal conclusions and mixed questions of law and fact are reviewed *de novo*. *See Castro v. Ward*, 138 F.3d 810, 815-16 (10th Cir. 1998). "[T]he presumption of correctness will continue to apply to any findings of fact underlying mixed questions." *Id.* at 816 (quoting *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir. 1989)). *See also* 2 Randy Hertz and James S. Liebman, *Federal Habeas Corpus Practice and Procedure*, § 32.1 at 1565 (5th ed. 2005) (if § 2254 habeas claim was not adjudicated on the merits, federal court must employ pre-AEDPA standard of *de novo* review of legal and mixed legal-factual rulings).

### B.  Analysis

Subject to the foregoing standards, the Court considers Ms. Camacho's claims in this proceeding.

### 1.  Ms. Camacho's Ineffective Assistance of Counsel Claims

Ms. Camacho contends that she was denied constitutionally effective assistance of counsel because her trial counsel failed to do the following: (1) file a notice of appeal of her conviction and

sentence; (2) comply with the New Mexico Court of Appeals' order to file a docketing statement and to show cause why sanctions should not be imposed on him; (3) subpoena Ms. Camacho's co-defendant, Ms. Reyes, to testify about who the narcotics belonged to, and object to the use of Ms. Reyes' hearsay testimony at Ms. Camacho's trial that the narcotics belonged to Ms. Camacho thereby denying her right of confrontation; (4) present exculpatory evidence by calling Amanda Brymer as a potential defense witness for Ms. Camacho's trial to testify that Ms. Brymer heard Ms. Reyes state in prison that the drugs belonged to Ms. Reyes; (5) present other witnesses at Ms. Camacho's trial, including a prison guard regarding Ms. Brymer's statements; (6) disclose to the trial court that Ms. Camacho needed medications in order to understand the trial proceedings and participate in her defense; (7) submit a lesser offense of "personal possession" as a jury instruction; and (8) provide civilian clothes for Ms. Camacho for her trial. ***Petition (Doc. 1-3)*** at 2-5.

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*. 466 U.S. 668 (1984). To prevail on an ineffective assistance claim under the *Strickland* standard, Ms. Camacho must show that (a) her attorney's performance fell below an objective standard of reasonableness, and (b) she was prejudiced by the attorney's deficient performance. *Id.* at 687-88. Both showings must be made to satisfy the *Strickland* standard. *Id.* at 687. To demonstrate unreasonable performance, Ms. Camacho must show that her attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms." *Id.* at 688. To demonstrate prejudice, Ms. Camacho must show a reasonable probability, sufficient to undermine confidence in the outcome, that the result of the proceeding would have been different but for her attorney's alleged unprofessional errors. *Id.* at 694. The Court begins with the "strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted).   The Court does not have to address both prongs of the *Strickland* standard if Ms. Camacho makes an insufficient showing on one of the prongs. *Id.* at 697.

    The Court finds that Ms. Camacho's claims regarding her counsel's ineffective assistance fail because Ms. Camacho does not establish that her counsel's performance was objectively unreasonable, nor does she identify how her counsel's alleged errors would have altered the outcome of her case.  Ms. Camacho's claims that her counsel failed to file a notice of appeal of her conviction and failed to comply with the New Mexico Court of Appeals' order to file a docketing statement and to show cause why sanctions should not be imposed do not comprise an ineffective assistance of counsel claim under *Strickland*.  First, Ms. Camacho's counsel did file a Docketing Statement in her case.  ***Response***, Exhibit F *(Doc. 7-1)* at 36-46.  Second, the New Mexico Court of Appeals explained that even though Ms. Camacho's counsel's failure to pursue her direct appeal in a timely fashion constitutes *per se* ineffective assistance of counsel pursuant to state law, the only form of relief available to Ms. Camacho for her counsel's failure would be to allow her to pursue that appeal on the merits, which the New Mexico Court of Appeals proceeded to do. *Id.*, Exhibit G *(Doc. 7-1)* at 50 (citing *State v. Duran*, 105 N.M. 231, 233, 731 P.2d 374, 376 (N.M. Ct. App. 1986)).  Under *Strickland*, Ms. Camacho can show no prejudice for her trial counsel's failure to pursue her direct appeal because all of her claims were allowed to proceed in the state courts on the merits despite her trial counsel's actions.

    In addition, the Court finds that Ms. Camacho's claims that her counsel failed to subpoena Ms. Reyes to testify at Ms. Camacho's trial and failed to object to the "hearsay" testimony of

Ms. Reyes' used at Ms. Camacho's trial do not constitute ineffective assistance of counsel. Ms. Camacho's trial counsel explained in the Docketing Statement he filed with the New Mexico Court of Appeals that his trial strategy was to delay Ms. Camacho's trial until Ms. Reyes was tried and convicted, and then to argue at Ms. Camacho's trial that the drugs must have belonged to Ms. Reyes; otherwise, the State would have charged the women with a conspiracy. *See **Response***, Exhibit F *(Doc. 7-1)* at 39-40. Ms. Camacho's trial counsel stated that he was successful in delaying Ms. Camacho's trial until after Ms. Reyes' trial, that the State introduced Ms. Reyes as a prosecution witness to testify at Ms. Camacho's trial under grant of use immunity (because of her pending appeal), and that Ms. Reyes testified that the drugs belonged to Ms. Camacho. *Id.* at 40. A counsel's decisions involving trial strategy are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. Even though Ms. Camacho's claim that Ms. Reyes was not subpoenaed and that her testimony was presented as hearsay contradicts her trial counsel's version of events, it is Ms. Camacho's burden to show that, but for her counsel's actions, the outcome of her trial would have been different, and she has failed to do this. Ms. Camacho presents no evidence that indicates that Ms. Reyes would have testified that the drugs were hers and not Ms. Camacho's, or that there was a reasonable probability that the outcome of her case would have been any different had Ms. Camacho's counsel done the things Ms. Camacho states that he did not. Accordingly, Ms. Camacho's claims on this issue should be denied.

Ms. Camacho also fails to show that her trial counsel was ineffective for failing to present the testimony of Ms. Brymer at Ms. Camacho's trial. Ms. Camacho's trial counsel states that he "contacted the witness requested by Ms. Camacho before trial and determined the witness had no relevant or exculpatory evidence and would actually be harmful to [Ms.] Camacho's case." ***Response***, Exhibit F *(Doc. 7-1)* at 41. While it is unclear whether this witness was in fact

Ms. Brymer, Ms. Camacho again fails to provide evidence to show that Ms. Brymer would have testified as Ms. Camacho states she would have, or that her testimony would have provided a reasonable probability that the outcome of her trial would have been different.  The Court further finds that Ms. Camacho's claim that her trial counsel "failed to provide adequate witnesses for [Ms. Camacho]" is conclusory and should be denied because Ms. Camacho fails to disclose who those witnesses are, what they would have testified about, and how their testimony would have changed the outcome of her case.  *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

In addition, Ms. Camacho's allegations that her counsel failed to disclose to the trial court that she needed her pain and anti-psychotic medications and that her counsel failed to provide her civilian clothes for her trial, also fail to state a claim for ineffective assistance of counsel.  Ms. Camacho's claim that she was not given civilian clothes for her trial is contradicted by her trial counsel.  *See **Response***, Exhibit F *(Doc. 7-1)* at 41 (stating that "[Ms.] Camacho was in civilian cloth[e]s on both days of the trial").  Regarding Ms. Camacho's claim that her trial counsel did not disclose to the court that she needed her pain and anti-psychotic medication, Ms. Camacho's trial counsel states that "[t]hrough counsel, [Ms.] Camacho advised the court she had been transported to trial without her medication." *Id.* at 40.  While Ms. Camacho's trial counsel states that the record does not reflect that any lack of lucidity or competence on Ms. Camacho's part was brought to the attention of the trial court, her trial counsel also states that the record does not reflect that "the [trial] court observed any behavior sufficient to inquire during trial whether [Ms.] Camacho was in distress or needed medical assistance." *Id.* at 41.  Moreover, Ms. Camacho does not present any evidence to show that the outcome of her trial would have been any different had she received her medications or appeared in civilian clothes and, therefore, these claims should be denied.

Finally, Ms. Camacho's claim that her trial counsel failed to submit a jury instruction regarding a lesser offense of "personal possession [of a controlled substance]" also fails to establish ineffective assistance of counsel.  Ms. Camacho does not make any showing that a jury instruction regarding "personal possession" would have been appropriate given that Ms. Camacho was charged with and convicted of, *inter alia*, trafficking heroin and cocaine by possession with intent to distribute (second offenses for each of these controlled substances, respectively).  Ms. Camacho's statement that her counsel's failure to submit a jury instruction regarding the lesser offense of "personal use" meant "the difference between 18 months and 18 years" (*see* **Petition** *(Doc. 1-3)* at 5) is without merit because an 18-year sentence is the basic sentence under N.M.S.A. 1978, § 31-18-15(A)(3) for a second or subsequent violation of possession with intent to distribute a controlled substance, N.M.S.A. 1978, § 30-31-20(A)(3), which is what Ms. Camacho was convicted of.  *See* N.M.S.A. 1978, § 30-31-20(B)(2) (stating that a person who violates this section for the second and subsequent offenses is "guilty of a first degree felony and shall be sentenced pursuant to the provisions of Section 31-18-15"), N.M.S.A. 1978, § 31-18-15(A)(3) (stating that for a first degree felony the basic sentence of imprisonment is 18 years).  The Court, therefore, finds that Ms. Camacho has not shown prejudice by her counsel's alleged unreasonable performance and recommends that this claim should also be denied.

### 2.  Ms. Camacho's Claim That the Trial Court Abused its Discretion

Next, Ms. Camacho claims that the trial court abused its discretion by: (1) denying Ms. Camacho an evidentiary hearing on her state habeas petitions; (2) not applying the correct controlling authority in its decision to deny her writ of habeas corpus; (3) not reviewing *de novo* the issue regarding Ms. Camacho's claim that she was in "prison garb" during her trial; and (4) failing

to inquire into Ms. Camacho's health when her medical issues were disclosed to the judge during the pre-trial hearings. ***Petition (Doc. 1-3)*** at 6.

In order to be granted relief pursuant to 28 U.S.C. § 2254 for the state trial court's alleged abuse of discretion, Ms. Camacho must show that the state court proceedings: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted). The Tenth Circuit has held that "[f]ederal habeas review does not extend to the correction of purely state law procedural errors that do not rise to the level of a constitutional due process violation . . . ." *Shipley v. State of Oklahoma*, 313 F.3d 1249, 1251 (10th Cir. 2002) (citation and internal quotation marks omitted) (affirming district court's conclusion that habeas petitioner's claim that the state trial court erred in failing to provide adequate written conclusions of law in its order denying the petitioner's application for post-conviction relief did not amount to a federal constitutional claim that is cognizable in a federal habeas action); *see also Cooper v. Nelson*, No. 99-3180, 201 F.3d 447, 1999 WL 1243098 at * 1-2 (10th Cir. Dec. 21, 1999) (unpublished) (affirming district court's conclusion that habeas petitioner's claim of error in denial of evidentiary hearing in post-conviction proceeding lacked constitutional grounds and did not amount to the denial of a federal right and is, therefore, not appropriate for habeas corpus relief).

-18-

To the extent Ms. Camacho's claims that the trial court abused its discretion raise only state law issues, they are not cognizable in the present habeas proceeding. *See* 28 U.S.C. § 2254(d); *Estelle*, 502 U.S. at 67-68. Ms. Camacho does not make any showing that the trial court's decisions resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ms. Camacho fails to state any grounds on which she might have been entitled to an evidentiary hearing on her habeas petitions, or what was the correct standard of review that she claims the state court failed to apply in her habeas petitions. These claims, therefore, are conclusory and should be denied. *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). In addition, Ms. Camacho makes no showing that she was wearing prison garb at her trial. Her trial counsel stated in her direct appeal that "[Ms.] Camacho was in civilian cloth[e]s on both days of the trial," (***Response***, Exhibit F *(Doc. 7-1)* at 41), and the New Mexico Court of Appeals found that Ms. Camacho's claim that she appeared at her trial in prison garb is "unsupported by the record" (*id.*, Exhibit I *(Doc. 7-1)* at 67). Moreover, Ms. Camacho fails to make any showing that, even if she had appeared in prison garb for her trial, that she objected to doing so at the time of her trial. *See United States v. Portillo-Quezada*, 469 F.3d 1345, 1350 (10th Cir. 2006) ("[T]he Supreme Court has been quite clear that a defendant's failure to object to trial proceedings conducted in prison garb negates the presence of compulsion necessary to establish a constitutional violation.") (citation and internal quotation marks and brackets omitted). Finally, Ms. Camacho's claim that the trial court abused its discretion because it failed to inquire as to her health and welfare fails to raise any federal constitutional violation, nor does the record reflect that any such neglect was unreasonable because, as stated by Ms. Camacho's attorney on her direct

appeal, the record does not reflect that "the [trial] court observed any behavior sufficient to inquire during trial whether [Ms.] Camacho was in distress or needed medical assistance." ***Response***, Exhibit I *(Doc. 7-1)* at 41. The Court, therefore, recommends that federal habeas relief pursuant to 28 U.S.C. § 2254 be denied with respect to Ms. Camacho's claims that the state trial court abused its discretion.

### 3.  Ms. Camacho's Claim that the State Engaged in Prosecutorial Misconduct

Ms. Camacho next claims that the state engaged in prosecutorial misconduct because: (1) "[t]he Ruidoso Police [Department] (State's witnesses) staged the crime scene by placing [Ms. Camacho's] two driver's licenses (Sanders - married name and Camacho [-] single name) which had been in [Ms. Camacho's] checkbook within her backpack" (emphasis in original); (2) introducing Ms. Camacho's husband's history of drug offenses at her trial; and (3) allowing Ms. Camacho's co-defendant, Ms. Reyes, "to 'walk' on all charges, despite her ownership of the drugs; she received no child abuse charge, and continues to sell drugs in Texas." ***Petition*** *(Doc. 1-3)* at 7-8.

 "[P]rosecutorial misconduct in a state court violates a defendant's right to a fair trial only if the prosecutor's actions so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Nguyen v. Reynolds*, 131 F.3d 1340, 1358 (10th Cir. 1997) (citation and internal quotation marks omitted), and *Knapp v. Janecka*, No. 09-2001, 337 Fed.Appx. 766, 771, 2009 WL 2138422 at **3 (10th Cir. July 20, 2009) (unpublished) (citations and internal quotation marks and brackets omitted). Ms. Camacho does not provide any evidence to support her claims that the evidence in her case was staged, that evidence regarding her husband's history of drug offenses influenced the jury, or that the outcome of Ms. Reyes' trial infected Ms. Camacho's trial with unfairness. *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual

averments are insufficient to state a claim on which relief can be based."). In addition, the alleged remarks by the prosecution regarding Ms. Camacho's husband's history of drug offenses, even if they were improper, do not amount to comments that would have resulted in an unfair trial. *See Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) ("[N]ot every improper or unfair remark made by a prosecutor will amount to a federal constitutional deprivation.") (citation omitted); *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (stating that to warrant habeas relief, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned," but "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process") (citations and internal quotation marks omitted). The Court does not find that the prosecution's remarks regarding Ms. Camacho's husband's history of drug offenses "plausibly could have tipped the scales in favor of the prosecution." *Neill v. Gibson*, 278 F.3d 1044, 1061 (10th Cir. 2001) (citations and internal quotation marks omitted). Nor does the Court find that the comments made by the prosecutor are of the type to "inflame the passions or prejudices of the jury." *United States v. Cooper*, Nos. 02-40069-01-SAC, 02-40069-02-SAC, 02-40069-03-SAC, 2004 WL 432236 at *13 (D. Kan. Feb. 10, 2004) (unpublished) (citation omitted). For these reasons, the Court recommends denying Ms. Camacho's claims of prosecutorial misconduct.

### 4. Ms. Camacho's Claim Regarding Double Jeopardy

Finally, Ms. Camacho claims that her two convictions for trafficking violate the double jeopardy clause of the United States constitution, and that the jury should have been instructed on the "Single Intent Doctrine." *Petition (Doc. 1-2)* at 2. Ms. Camacho contends that the trafficking counts "are not separate and distinct acts, and there is no time or intervening event between the charged acts." *Id.*

-21-

When a double jeopardy claim is raised on federal habeas corpus review, the Tenth Circuit has explained that, although the Court is "not bound by state court rulings on ultimate constitutional questions," the Court "should defer to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes." *Thomas v. Kerby*, 44 F.3d 884, 887 (10th Cir. 1995) (citation and internal quotation marks omitted). The New Mexico Court of Appeals ruled in Ms. Camacho's direct appeal that "a nearly identical argument [to Ms. Camacho's double jeopardy claim] was rejected by [the New Mexico] Supreme Court," and that the New Mexico Court of Appeals is not at liberty to expand the single-intent doctrine as Ms. Camacho asks it to. ***Response***, Exhibit I *(Doc. 7-1)* at 68-69 (citing *State v. Smith*, 94 N.M. 379, 381, 610 P.2d 1208, 1210 (1980)). In *State v. Smith*, the New Mexico Supreme Court reversed the New Mexico Court of Appeals' decision to merge four counts of drug trafficking of four separate drugs, and explained that "there is no double jeopardy problem [for the multiple drug counts] because the same evidence rule does not bar prosecution on each of the drug counts." 94 N.M. at 381, 610 P.2d at 1210. This ruling by the state court is not contrary to, nor does it involve an unreasonable application of, clearly established Supreme Court law. The Supreme Court has held that the double jeopardy clause prohibits not only successive prosecutions for the same offense, but also multiple punishments for a single offense. *United States v. Dixon*, 509 U.S. 688, 695-96 (1993). However, "[m]ultiple punishment claims are controlled by the intent expressed in the criminal statute(s) violated, i.e., if the legislature provided for multiple offenses under the circumstances, there is no premise for a double jeopardy claim." *Thomas*, 44 F.3d at 887 (citations omitted). Here, the New Mexico courts determined that the state legislature did indeed contemplate multiple offenses when the drug trafficking charges involve different drugs. *See Smith*, 94 N.M. at 381, 610 P.2d at 1210 ("We are persuaded that the public interest and the intent of our

drug laws militate against this Court permitting here the merger of the four counts of trafficking in the four separate drugs.").  That decision is not contrary to clearly established Supreme Court law and the undersigned, therefore, recommends that Ms. Camacho's double jeopardy claim be denied.

### C. Conclusion

For the foregoing reasons, the Court finds that habeas relief is not warranted on Ms. Camacho's claims.  Ms. Camacho has failed to establish that the adjudication of her claims on the merits in the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  *See* 28 U.S.C. §§ 2254(d)(1)-(2). Therefore, the Court recommends that this case be dismissed with prejudice and that Ms. Camacho's *Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be denied.

### RECOMMENDED DISPOSITION

The Court recommends that Ms. Camacho's *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

_____
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**

-23-